**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TRILLER GROUP INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE NASDAQ STOCK MARKET LLC,<br><br>Defendant. | Civil Action No. ___________________<br><br>[Removed from the Court of Chancery of the State of Delaware, Civil Action No. 2026-1366-] |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant The Nasdaq Stock Market LLC ("Nasdaq") hereby removes this action from the Court of Chancery of the State of Delaware to the United States District Court for the District of Delaware on the grounds that this action raises a federal question over which this Court has original and exclusive federal-question jurisdiction. In support, Nasdaq respectfully represents as follows:

## I. PROCEDURAL BACKGROUND

1. Plaintiff Triller Group Inc. ("Plaintiff" or "Triller") commenced this civil action on October 15, 2026, in the Court of Chancery of the State of Delaware, filed as Civil Action Number 2026-1366-, and captioned *Triller Group Inc. v. The Nasdaq Stock Market LLC* (the "State-Court Action"), by filing a Verified Complaint for Declaratory and Injunctive Relief (the "Complaint" or "Compl.").

2. Nasdaq is named as the sole defendant in the State-Court Action.

3. Nasdaq has not yet been served with the Complaint or summons in the State-Court Action. However, pursuant to 28 U.S.C. § 1446(a), the documents attached hereto as Exhibit 1

through Exhibit 5 include true and correct copies of "all process, pleadings, and orders" that were otherwise received by Nasdaq in the State-Court Action on October 15, 2026.

## II. PROPER VENUE

4. The United States District Court for the District of Delaware is the proper venue under 28 U.S.C. § 1441(a) because it is the federal district embracing the place where the State-Court Action is currently pending. The State of Delaware constitutes a single federal judicial district, and the Court of Chancery of the State of Delaware sits within it. *See* 28 U.S.C. §§ 87, 1446(a).

## III. TIMELINESS OF REMOVAL

5. This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is being filed on October 16, 2026, which is within thirty (30) days after receipt by Nasdaq of the Complaint in the State-Court Action.

## IV. PROPER GROUNDS FOR REMOVAL

6. This action is removable to this Court pursuant to 28 U.S.C. § 1441(a) because this Court has original jurisdiction over it, as set forth below, and because Nasdaq has satisfied the procedural requirements for removal.

7. The U.S. Supreme Court has explained that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). Both the Third Circuit and this Court have adopted this standard. *See, e.g., Williams v. ProMedica Health Sys. Inc.*, No. 24-1369, 2024 WL 4927258, at *2–4 (3d Cir. Dec. 2, 2024), *cert. denied*, 146 S. Ct. 112 (2025); *M.K. v. Prestige*

*Acad. Charter Sch.*, 302 F. Supp. 3d 626, 633–35 (D. Del. 2018) (concluding federal-question jurisdiction existed under *Grable* where the plaintiff's breach-of-settlement-agreement claim arose solely from, and turned on construction of, a federal statutory scheme); *see also Doe v. Rutgers*, No. 22-2087, 2023 WL 2239399, at *2 n.2 (3d Cir. Feb. 27, 2023) (explaining that the plaintiff's claim, "even if understood as a state-law claim, gives rise to federal question jurisdiction [under *Grable*] because it requires us to decide whether [a federal statutory scheme] prohibits the service fees at issue in this case — a substantial question of federal law.").

8. This is a civil action over which this Court has original and exclusive federal-question jurisdiction under the provisions of 28 U.S.C. § 1331 and 15 U.S.C. § 78aa because, although styled as claims under Delaware and New York state law, each of Plaintiff's alleged claims in the State-Court Action are predicated entirely on alleged violations of Nasdaq's Listing Rules promulgated under the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78 *et seq.*, and seek relief based on Nasdaq's duty under the Exchange Act, as a self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC" or the "Commission"), to comply and enforce compliance with those rules, the Exchange Act itself, and the Exchange Act's implementing regulations. Accordingly, as detailed below, Plaintiff's lawsuit necessarily raises a federal issue that is actually disputed, substantial, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *See Gunn*, 568 U.S. at 258.

9. Nasdaq is an SRO registered with the SEC as a national securities exchange pursuant to the Exchange Act. 15 U.S.C. § 78f. Nasdaq has promulgated a comprehensive set of rules governing the listing and delisting of companies' securities on Nasdaq's exchange. *See* Nasdaq Rule 5000 *et seq.* The SEC has reviewed and approved those rules under the procedures

prescribed in the Exchange Act, *see*, *e.g.*, SEC Release No. 34-53128, 71 Fed. Reg. 3,550 (Jan. 23, 2006), and the Exchange Act authorizes Nasdaq and other national securities exchanges to maintain standards for companies that seek to list their securities for public sale on their exchange, *see DL Cap. Grp., LLC v. Nasdaq Stock Mkt.*, 409 F.3d 93, 95 (2d Cir. 2005); 15 U.S.C. § 78l(d).

10. The State-Court Action challenges the October 5, 2026 decision of an independent Nasdaq Hearings Panel (the "Panel") to suspend and delist Triller's common stock and warrants from the Nasdaq Capital Market for failure to comply with two of the aforementioned listing rules: (1) Listing Rule 5550(a)(2) (the "Bid Price Rule"), which requires listed companies to maintain a minimum closing bid price of $1 per share; and (2) Listing Rule 5550(b)(2) (the "MVLS Rule"), which requires listed companies to maintain a minimum of $35 million in market value of listed securities. *See* Compl. ¶¶ 127–32. Trading in Triller's securities was suspended more than a week ago, at the open of trading on October 7, 2026. *Id.* ¶ 138.

11. Plaintiff alleges that the Panel exceeded the authority conferred by Nasdaq's SEC-approved Listing Rules when it subjected Triller to continued Panel jurisdiction through October 14, 2026, even though the Panel had determined on August 3, 2026 that Triller regained compliance with the Bid Price Rule. *See* Compl. ¶¶ 93–105. Plaintiff also alleges that the Panel departed from the Listing Rules and from the fair procedure required by the Exchange Act when it made the determination to delist the securities of Triller on October 5, 2026, without a Staff Delisting Determination, notice, or a hearing on the Bid Price Rule deficiency, and without the 180-day compliance period on the MVLS Rule deficiency that Plaintiff contends is required by Listing Rules 5810(c)(3)(C) and 5810(d)(1). *See id.* at 4 and ¶¶ 116–20, 128–32. Plaintiff further alleges that the Nasdaq Listing and Hearing Review Council (the "Listing Council") arbitrarily denied Triller's request for a stay. *Id.* ¶¶ 134–38.

12. Based on these allegations, Plaintiff asserts four causes of action: (1) declaratory judgment under 10 Del. C. § 6501 concerning "the parties' respective rights and obligations under the Listing Agreement and the Listing Rules that govern Nasdaq's performance of it" (*Id.* ¶ 170); (2) breach of contract based on Nasdaq's alleged breach of the Listing Agreement's warranty that it would endeavor to provide services to Triller in a good and workmanlike manner, which Plaintiff alleges "obligated Defendant [Nasdaq] to apply its Listing Rules and the procedures thereunder reasonably, accurately, and not in an arbitrary and capricious manner" (*Id.* ¶ 175); (3) breach of the implied covenant of good faith and fair dealing in the Listing Agreement, which Plaintiff alleges occurred by virtue of Nasdaq "arbitrarily, capriciously, and irrationally disregarding its own Listing Rules governing the deficiency and delisting review process" (*Id.* ¶ 184); and (4) a temporary restraining order and preliminary injunction under Court of Chancery Rule 65 to, among other things, "prevent Nasdaq from completing the delisting of Triller's securities" *Id.* ¶ 188.

13. Among other things, Plaintiff seeks declarations that the Panel lacked jurisdiction after August 3, 2026, that Nasdaq could not delist Triller on the Bid Price Rule deficiency "without a Staff Delisting Determination and an opportunity for a hearing under Listing Rules 5810 and 5815," that Triller is entitled to the 180-day MVLS compliance period "under Listing Rules 5810(c)(3)(C) and 5810(d)(1)," and that the Panel's delisting decision is "contrary to the Listing Rules." *Id.* ¶ 171. Plaintiff also seeks to enjoin Nasdaq, "pending the Listing Council's determination of Triller's appeal and, if Triller timely seeks review, the SEC's disposition of any application for a stay under Section 19(d) of the Exchange Act," from "filing a Form 25 or taking any other step to delist Triller's common stock and warrants," as well as an order directing Nasdaq to "lift the suspension and restore trading." *Id.* at 53–54.

14. Plaintiff's transparent attempts to plead around federal-question jurisdiction fail

and do not change the analysis. The Complaint contends that Triller "does not assert any claim under the Exchange Act or any other federal law," that "none of its claims requires the resolution of a substantial question of federal law," and that the Listing Rules are merely "the terms that govern Nasdaq's performance of the Listing Agreement." *Id.* ¶ 3. But Plaintiff's Complaint evidences that each of its claims are predicated upon the interpretation of the Exchange Act 15 U.S.C. § 78a et seq., Nasdaq's status as an SRO, and Nasdaq's regulatory application of its SEC-approved Listing Rules. Plaintiff itself alleges that, because Nasdaq is an SRO under the Exchange Act, the Listing Agreement's warranty "required Nasdaq to apply its own Listing Rules faithfully, as written," and that Nasdaq's conduct fell short of the Exchange Act's requirements that an SRO comply with its own rules under Section 19(g)(1) and provide a fair procedure under Section 6(b)(7). *Id.* at 4 and ¶ 11. Plaintiff's Complaint acknowledges that "Nasdaq is not an ordinary contract counterparty under the Listing Agreement; it is a national securities exchange and SRO bound under the Exchange Act to adhere to deliberative procedures in its making and application of rules to listed companies," *Id.* at ¶ 143. The Complaint also repeatedly recognizes that Plaintiff's alleged contractual claims under the Listing Agreement are derived from Nasdaq's obligations under the Exchange Act and Nasdaq's Listing Rules approved by the SEC pursuant to the Exchange Act. For example, Plaintiff alleges that "[i]ssuers like Triller enter into the Listing Agreement with the reasonable expectation, grounded in the Exchange Act, that Nasdaq will follow the fair procedures codified in its Listing Rules." *Id.* at ¶ 145.

15. Every count, and every declaration Plaintiff seeks, therefore turns on whether Nasdaq correctly construed and applied its Commission-approved Listing Rules. A plaintiff cannot avoid federal jurisdiction by labeling as contract claims what are, in substance, claims to enforce an exchange's duties under its SEC-approved rules. *See NASDAQ OMX Grp., Inc. v. UBS Sec.,*

*LLC*, 770 F.3d 1010, 1018–31 (2d Cir. 2014) (finding federal-question jurisdiction under § 1331 over state-law claims based on alleged violations of exchange rules). Plaintiff's requested relief also expressly contemplates review by the SEC under Section 19(d) of the Exchange Act. *See* Compl. at 53.

16. In other words, to prevail on any of Plaintiff's claims or to obtain requested relief, Plaintiff must demonstrate that the Panel's decision that Triller's securities should be suspended and delisted, and the Listing Council's refusal to stay that decision, were contrary to Nasdaq's Listing Rules. That necessarily raises a federal question because all exchange rules—including Nasdaq's rules establishing listing requirements and delisting procedures—must be submitted to the SEC for review and approval before the rules become effective under the Exchange Act's procedures. 15 U.S.C. § 78s(b).

17. Indeed, Nasdaq's rules (with limited exceptions not relevant here) cannot be changed without the Commission's approval, 15 U.S.C. § 78s(b), and are subject to "close supervision by the SEC." *Cleantech Innovations, Inc. v. Nasdaq Stock Market, LLC ("Cleantech I")*, No. 11-cv-09358, 2011 WL 7138696, at *2 (S.D.N.Y. Dec. 30, 2011); *see also DL Capital*, 409 F.3d at 95 ("[T]he SEC has extensive involvement with, and broad oversight of, SROs, including the responsibility to approve or reject any rule, practice, policy, or interpretation proposed by an SRO."). Additionally, exchanges are bound to comply with their "own rules" under 15 U.S.C. § 78s(g)(1) and are subject to sanctions by the SEC for failure to comply with those rules. *See* 15 U.S.C. § 78s(h)(1) (authorizing the SEC to impose a variety of sanctions upon an SRO if it finds that the SRO "has violated . . . any provision of this chapter, the rules or regulations thereunder, or its own rules").

18. Nasdaq's Commission-approved listing rules include rules designed to provide

Panels with broad discretion to apply additional and more stringent criteria for continued listing. In particular, Listing Rule 5815(c)(4) provides in relevant part that the "Panel may subject the Company to additional or more stringent criteria for the initial or continued listing of particular securities based on any event, condition, or circumstance that exists or occurs that makes initial or continued listing of the securities inadvisable or unwarranted in its opinion, even though the securities meet all enumerated criteria for initial or continued listing on Nasdaq." Exercising that authority, the Panel informed Triller on July 9, 2026 that it would apply more stringent bid price criteria and maintain jurisdiction until October 14, 2026. Compl., Ex. 5. Plaintiff disputes that the Listing Rules permitted the Panel to do so. *See* Compl. ¶¶ 101–04. As such, Plaintiff's core assertion and all resulting claims rest upon the interpretation of federal law and a national securities exchange's Listing Rules thereunder.

19. Moreover, the Listing Rules reflect Nasdaq's obligation to promptly evaluate non-compliant companies for possible suspension and delisting of their securities. Given that the delisting of a non-compliant company is stayed during Panel proceedings, the Panel's prompt consideration of additional listing rule violations during the Panel's period of continued jurisdiction is necessary to protect current and prospective investors in the company, who are entitled to assume that the securities listed on Nasdaq meet Nasdaq's listing standards. *See In re Fog Cutter Cap. Grp., Inc.*, Release No. 34-52993, 2005 WL 3500274, at *6 (Dec. 21, 2005) ("Listing . . . creates expectations among investors that listed companies meet basic standards of corporate governance and financial soundness."); *In re Tassaway, Inc.*, Release No. 34-11291, 1975 WL 161326, at *2 (Mar. 13, 1975) ("[P]rospective future investors . . . [are] entitled to assume that the securities in the system meet the system's standards. Hence the presence in NASDAQ of non-complying securities could have a serious deceptive effect.").

20. Because the Complaint seeks relief based upon Nasdaq's exercise of its self-regulatory responsibilities pursuant to its Commission-approved rules establishing listing requirements and delisting procedures (which arise under and have the force of federal law), subject matter jurisdiction is vested in this Court by 28 U.S.C. § 1331.[1] *See*, *e.g.*, *Citadel Sec., LLC v. CBOE*, 808 F.3d 694, 702 (7th Cir. 2015) ("[R]emoval was proper because the plain language of the Exchange Act establishes that federal courts have exclusive jurisdiction over actions seeking to interpret and enforce compliance with exchange rules or the Act itself."); *NASDAQ OMX*, 770 F.3d at 1018–31 (finding federal-question jurisdiction under § 1331 over state-law claims based on alleged violations of exchange rules); *cf. Goldman v. Citigroup Glob. Mkts. Inc.*, 834 F.3d 242, 258 (3d Cir. 2016) (explaining that *NASDAQ OMX* implicated "the proper functioning of a national securities exchange," which "is clearly a much more significant issue of federal securities law" than the arbitration procedures of a non-exchange SRO).

21. In turn, because federal-question jurisdiction exists under § 1331, 15 U.S.C. § 78aa "provides exclusive federal jurisdiction" over Plaintiff's case. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 393 (2016); *see also Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 167 (3d Cir. 2014) (explaining § 78aa is "coextensive with §

---

[1] Although the State-Court Action is properly removable to federal court, Nasdaq reserves any defenses, arguments, and rights to challenge the propriety of Plaintiff disputing Nasdaq's delisting determination and procedures through district court litigation, including pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), rather than by seeking such relief from the SEC. In particular, the Exchange Act outlines a comprehensive process for reviewing SROs' final decisions in which review must first go to the SEC and then to a U.S. Court of Appeals. *Boustead Sec., LLC v. Fin. Indus. Regul. Auth., Inc.*, No. 26-cv-00490, 2026 WL 3059382, at *2 (N.D. Ill. Oct. 13, 2026); *see also Cleantech Innovations, Inc. v. Nasdaq Stock Mkt., LLC*, No. 11-cv-09358, 2012 WL 345902, at *1–2 (S.D.N.Y. Jan. 31, 2012) (dismissing action "for lack of federal subject matter jurisdiction" following removal); *Cleantech I*, 2011 WL 7138696, at *2–6 ("The Exchange Act provides the exclusive route by which Plaintiff can seek a stay of the delisting of its stock. Whether or not Plaintiff chooses to avail itself of this process, this Court lacks jurisdiction to grant the relief requested.").

1331 for purposes of establishing subject-matter jurisdiction," and "merely serves to divest state courts of jurisdiction"). Under § 78aa, "[t]he district courts of the United States . . . shall have exclusive jurisdiction of violations of [the Exchange Act] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder." 15 U.S.C. § 78aa(a).

22. The federal question here is substantial for the same reason: the State-Court Action challenges a national securities exchange's application of SEC-approved listing and delisting rules—a core regulatory function.

23. The federal issue is also actually disputed and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Nasdaq disputes Plaintiff's construction of, among other things, Listing Rules 5810, 5815, and 5820, and the parties' competing interpretations of those rules are the central dispute in this case. *See, e.g.*, Compl. ¶ 171. And Congress has already struck the federal-state balance in favor of a federal forum: it vested the federal courts with exclusive jurisdiction over suits to enforce duties created by the Exchange Act and the rules thereunder, 15 U.S.C. § 78aa, and channeled review of exchange delisting decisions to the SEC and the federal courts of appeals, 15 U.S.C. §§ 78s(d), 78y, a process Plaintiff itself references, *see* Compl. at 53.[2] Allowing state courts to construe and enforce SEC-approved exchange listing rules would risk inconsistent interpretations of rules that apply uniformly to every company listed on a national securities exchange.

24. In summary, the State-Court Action seeks relief based upon alleged violations of, and seeks to enforce duties created by, Nasdaq's rules (which arise under the Exchange Act), the Exchange Act itself, and the Exchange Act's implementing regulations. These may only be

[2] *See supra* note 1.

addressed in federal court.

## V. NOTICE TO ADVERSE PARTIES AND THE STATE COURT

25. A copy of the Notice of Filing of this Notice of Removal is attached hereto as Exhibit 6.

26. Promptly after filing this Notice of Removal, Nasdaq will serve the Notice of Filing of the Notice of Removal on Plaintiff and will file a copy with the Register in Chancery of the Court of Chancery of the State of Delaware, as required by 28 U.S.C. § 1446(d).

27. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure, as required by 28 U.S.C. § 1446(a).

## VI. CONCLUSION

28. For the foregoing reasons, the State-Court Action is properly removable to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. Wherefore, Nasdaq removes the State-Court Action from the Delaware Court of Chancery to the United States District Court for the District of Delaware, and respectfully requests this Court assume full jurisdiction over this action.

Dated: October 16, 2026

Respectfully submitted,

*/s/ Elizabeth A. Sloan*
Elizabeth A. Sloan (No. 5045)
sloane@ballardspahr.com
BALLARD SPAHR LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Tel: (302) 252-4458
Fax: (302) 252-4466

Kurt L. Gottschall
(*pro hac vice* admission forthcoming)
kurt.gottschall@haynesboone.com
HAYNES AND BOONE LLP
675 15th Street, Suite 2200
Denver, Colorado 80202

Tel: (303) 382-6228
Fax: (303) 382-6210

Neil Issar
(*pro hac vice* admission forthcoming)
neil.issar@haynesboone.com
HAYNES AND BOONE LLP
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
Tel: (214) 651-5000
Fax: (214) 651-5940

*Attorneys for Defendant*
*The Nasdaq Stock Market LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, I caused a true and correct copy of the foregoing document to be served on all counsel of record using the electronic case filing system of the court.

*/s/ Elizabeth A. Sloan*
Elizabeth A. Sloan (No. 5045)